871 P.2d 958

**Henry TOWNSEND, as trustee of the Henry and Sylvia Townsend Revocable Trust, Plaintiff–Appellant,**

v.

**STATE of New Mexico ex rel. STATE HIGHWAY DEPARTMENT, and Jim Baca, Commissioner of Public Lands of New Mexico, Defendants–Appellees.**

No. 20861.

Supreme Court of New Mexico.

Feb. 9, 1994.

Rehearing Denied March 28, 1994.

Atwood, Malone, Mann & Turner, P.A., Charles F. Malone and Bryan D. Evans, Roswell, for plaintiff-appellant.

Bridget Jacober, Santa Fe, for defendant-appellee Com'r of Public Lands.

Nancy A. DaCosta, Sp. Asst. Atty. Gen., Santa Fe, for defendant-appellee State Highway Dept.

## OPINION

RANSOM, Chief Justice.

Henry Townsend, as trustee of the Henry and Sylvia Townsend Revocable Trust, appeals from an order dismissing his complaint against the State Highway Department and the Commissioner of Public Lands for failure to state a claim upon which relief could be granted. Townsend sought a declaratory judgment and damages for inverse condemnation, trespass, and conversion. The trial court held that Townsend's trespass and conversion claims were barred by the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (Repl.Pamp.1989), and that his inverse condemnation claim was barred by the applicable statute of limitations, NMSA 1978, § 42A–1–31 (Repl.Pamp.1981). We affirm in part and reverse in part.

*Standard of review.* A motion to dismiss under SCRA 1986, 1–012(B)(6) (Repl. Pamp.1992), may be granted only if it is evident that the plaintiff cannot recover or obtain relief under any set of facts provable under the claim. *Environmental Improve-ment Div. v. Aguayo,* 99 N.M. 497, 499, 660 P.2d 587, 589 (1983). On appeal from a grant of a motion to dismiss, this Court views the facts alleged in the complaint as true. *Id.*

*Facts and proceedings.* Henry and Sylvia Townsend own land that was purchased in December 1962 under a state land purchase contract. The purchase was made subject to a reservation of all mineral rights by the State. In December 1976, the Commissioner of Public Lands issued a five-year mineral lease to the State Highway Department authorizing the removal of sand and gravel from the land. All parties concede for the purpose of this appeal that the State did not and does not own or have rights to the sand and gravel. The Townsends were notified of the lease by letter on January 19, 1977. The lease was renewed in 1981 and expired by its own terms on December 26, 1986. During the term of the lease, the Highway Department entered the land to remove sand and gravel. This process required drilling and blasting rock and crushing the blasted rock pieces into the desired materials. Over the course of the lease, the Highway Department removed over 100,000 tons of rock from the land. At the expiration of the lease, stockpiles of crushed material were left on the land and the Highway Department has continued to enter the land and remove the stockpiled material. On June 30, 1987, Townsend filed his complaint for declaratory judgment and damages.

■ *The trial court properly dismissed the trespass and conversion claim.* An action for trespass to property is a tort. *Pacheco v. Martinez,* 97 N.M. 37, 41, 636 P.2d 308, 312 (Ct.App.1981). In addition, real property in the form of mineral rights or a profit a prendre is transformed into personal property when the physical substance is severed from the land, *see Willamette Quarries, Inc. v. Wodtli,* 308 Or. 406, 781 P.2d 1196, 1201 (1989) (in banc), and the wrongful taking of that substance constitutes conversion, which is an action that sounds in tort, *see* Restatement (Second) of Torts § 222A (1965) (describing what constitutes conversion of personal property). The state and its employees are immune from liability for torts except for the types of claims for which

immunity is waived in the Tort Claims Act. *See* § 41–4–4(A). Townsend's claims for trespass and conversion are not torts for which immunity has been waived by the Act. *See* §§ 41–4–5 to –12. Therefore, the trial court properly dismissed these claims.

■ Townsend argues that the Act is not applicable because the land purchase contract was executed in 1962, before the effective date of the Act, and application of the Act would impair Townsend's contract rights. In 1962, however, the State enjoyed total sovereign immunity subject only to a few exceptions. *See Hicks v. State*, 88 N.M. 588, 589, 544 P.2d 1153, 1154 (1975) (superseded by the Tort Claims Act). Because a contract incorporates the relevant law in force at the time of its creation, *see State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 130, 812 P.2d 777, 784 (1991), the sales contract incorporated the almost complete sovereign immunity that the State enjoyed at the time. Thus, Townsend's contract rights are not impaired by the application of the Tort Claims Act.

■ Townsend also argues that a trespass action may lie against an entity authorized to exercise the power of eminent domain when it comes onto land unlawfully and without authorization. For support, Townsend cites *North v. Public Service Co. of New Mexico*, 94 N.M. 246, 608 P.2d 1128 (Ct.App.), *cert. denied*, 94 N.M. 629, 614 P.2d 546 (1980). In *North*, the Court of Appeals held that the plaintiff had alleged facts that would support a trespass claim against an electric utility that had entered and bulldozed his land without permission. In a subsequent appeal after remand, however, the Court recognized that inverse condemnation is an exclusive remedy when property is taken or damaged for public use by a condemnor without paying compensation or initiating condemnation proceedings. *North*, 101 N.M. 222, 226, 680 P.2d 603, 607 (Ct.App.1983), *cert. quashed*, 101 N.M. 11, 677 P.2d 624 (1984); *see also Kaiser Steel Corp. v. W.S. Ranch Co.*, 81 N.M. 414, 421, 467 P.2d 986, 993 (1970) (reaffirming that inverse condemnation is an ex-

clusive remedy to recover damages when property is taken for public use). Thus, the trial court properly dismissed Townsend's trespass and conversion claims because there was no waiver of sovereign immunity and inverse condemnation was the appropriate and exclusive remedy.

*The trial court should not have dismissed the entire inverse condemnation claim.* The trial court dismissed Townsend's inverse condemnation claim because it found that the claim was barred by the statute of limitations. On appeal, Townsend argues that the trial court applied the wrong statute or, in the alternative, that the trial court misapplied the statute it used.

■ *—The applicable statute of limitations.* In Section 42A–1–31, the legislature established two statutes of limitations relating to property taken or damaged by state agencies or political subdivisions. Section 42A–1–31(A) refers to property acquired or held by the state and requires that a person seeking to reclaim an interest in the property commence an action "within three years from the date such person was first entitled to reclaim his interest." Section 42A–1–31(B) requires actions brought under NMSA 1978, Section 42A–1–29 (Cum.Supp.1993) (inverse condemnation statute) [1] to be instituted within three years from the date property is taken or damaged by a state agency.

Townsend argues that Section 42A–1–31(A) is the applicable statute of limitations and that he was not able to reclaim his interest until the second lease expired in 1986. Townsend is not, however, bringing an action to "reclaim" an interest in the property because the State has never legally acquired or held it. Instead, he is claiming that the property has been taken or damaged without just compensation. Therefore, the limitations period established in Section 42A–1–31(B) is applicable to these proceedings.

■ *—Application of the statute of limitations.—A "taking" occurred each time the State removed some portion of the sand or gravel.* The State argues that the taking in

---

1. Section 42A–1–31 refers to Section 42–1–23, but that section was repealed and replaced by Section 42A–1–29. *See* 1981 N.M.Laws, ch. 125,

§§ 61 (references to Section 42–1–23 are to be construed as references to Section 42A–1–29), 62 (repealing Section 42–1–23).

this case occurred the day the first lease was issued (December 27, 1976) because that was the date that Townsend was "effectually prevented" from mining the sand and gravel. For support, the State cites *Whitney Benefits, Inc. v. United States*, 926 F.2d 1169 (Fed.Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 406, 116 L.Ed.2d 354 (1991). In *Whitney Benefits*, Congress had passed a statute that took away a property owner's right to mine a single, specific deposit of coal. The owner argued that the right to mine the coal had a market value and that he suffered a compensable loss. The court held that the right to mine the coal was taken when the statute became law because the economic development of the property was "effectually prevented." *Id.* at 1172. The problem with applying this doctrine in the present case is that Townsend has not been generally precluded from mining the sand and gravel and has, in fact, removed several tons from his land. The only property he has been effectually prevented from using is what the State has already removed.

The State also cites *Loesch v. United States*, 645 F.2d 905, 227 Ct.Cl. 34, *cert. denied*, 454 U.S. 1099, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981), for authority that the taking occurred when it issued the mineral lease. *Loesch* involved flowage easements that had been purchased or condemned by the government. The court held that the statute of limitations began to run on the day the easements were obtained by purchase or condemnation. *Id.* at 924–25. In this case, however, the State never purchased or condemned the rights to the sand and gravel, and there is no comparable starting date for the limitations period. Further, the *Loesch* court based much of its decision on the fact that the plaintiffs had all of the necessary information to contest the government's determination regarding the extent of the taking and could have challenged the taking when they gave up their easements. *See id.* Here, Townsend could not have known of the extent of the taking until the Highway Department removed the sand and gravel. Thus, the statute of limitations could not have run from the date the mineral lease was issued.

The State could have established a date of the taking by instituting condemnation proceedings, but decided against this action. *See United States v. Dickinson*, 331 U.S. 745, 747, 67 S.Ct. 1382, 1384, 91 L.Ed. 1789 (1947) (explaining that the government could have fixed the date of taking by instituting appropriate condemnation proceedings). We note, however, that Townsend was still able to use the land for other purposes. He was not deprived of the use of his property until it was actually taken.

In *Valdez v. Mountain Bell Telephone Co.*, 107 N.M. 236, 240, 755 P.2d 80, 84 (Ct.App. 1988), our Court of Appeals discussed the rule regarding the running of the statute of limitations under Section 42A–1–31(B). The Court accepted the common-law rule that a new and separate cause of action arises in inverse condemnation with each new injurious occurrence. *Id.* We also accept the common-law rule and find that in this inverse condemnation case a new cause of action arose each time the Highway Department removed sand and gravel. Therefore, a permanent taking occurred each time the character of rocks was changed by blasting and each time a truck left the property loaded with sand or gravel. As each cause of action arose, the statute of limitations began to run as to that cause alone.

■ *—Section 42A–1–31 bars causes of action that accrued before its enactment if the action is not brought within a reasonable time.* At the time the lease was issued there was no applicable statute of limitations. Section 42A–1–31 became effective on July 1, 1981. 1981 N.M.Laws, ch. 125, § 64. Before Section 42A–1–31, the applicable statute read:

> The defendant or defendants to any such action may plead adverse possession as defined by Section 37–1–22 NMSA 1978, as a defense to said action, but no other statute of limitation shall be applicable or pleaded as a defense thereto.

NMSA 1978, § 42–1–24 (repealed by 1981 N.M.Laws, ch. 125, § 62). The phrase "any such action" refers to an action in inverse condemnation. Section 42A–1–30 substantially reenacted Section 42–1–24 but added

"except as provided in Section 42A–1–31" after the word "thereto".

"The general rule is that statutes of limitation may be passed where formerly there were none, and existing limitations periods may be reduced while the time is still running, provided *that a reasonable time* is left for the institution of an action before it is time-barred." *Terry v. New Mexico State Highway Comm'n*, 98 N.M. 119, 122, 645 P.2d 1375, 1378 (1982). Accordingly, the statute of a limitations created by Section 42A–1–31 may be applied retroactively to Townsend's claims as long as he was given a reasonable time within which to bring his action. Townsend, however, did not file this lawsuit until six years after the new statute of limitations came into effect. We find that, as to the claims that arose before July 1, 1981, Townsend did not bring his lawsuit within a reasonable time. Claims arising after July 1, 1981 are governed by Section 42A–1–31(B), and thus all claims arising between July 1, 1981 and June 30, 1984 are barred by the statute of limitations.

*Conclusion.* We affirm the dismissal of the trespass and conversion claims. We hold that the applicable statute of limitations for inverse condemnation claims is three years from the time of the injury. Under the facts alleged in the complaint, there were successive injuries giving rise to successive causes of action, and the statute of limitations began to run for each injury at the time it occurred. Damage or takings that occurred before June 30, 1984, three years before the filing of the action, are barred by Section 42A–1–31(B). We therefore reverse the dismissal of the inverse condemnation claim as it applied to takings occurring after June 30, 1984, and remand this case to the district court for proceedings consistent with this opinion.

IT IS SO ORDERED.

MONTGOMERY and FROST, JJ., concur.